| | | |
|---|---|---|
| GARY MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    3:25-CV-536-TAV-JEM |
| | ) | |
| JULIA GREGG, SERGEANT BRAY, | ) | |
| LT. HACKER, HELEN CAMPBELL, | ) | |
| MARY JOE. LABARGE, RICHARD | ) | |
| SCHUMPERT, SHAWN PHILLIPS, and | ) | |
| FRANK STRADA, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, a former Tennessee Department of Correction ("TDOC") prisoner, filed a pro se complaint for violation of 42 U.S.C. § 1983 [Doc. 2], a motion for leave to proceed *in forma pauperis* [Doc. 1], a motion for injunctive relief [Doc. 3], a motion to amend his complaint [Doc. 6], and a proposed amended complaint [Doc. 6-1].  For the reasons set forth below, Plaintiff's *in forma pauperis* motion [Doc. 1] will be **GRANTED**, his motion for injunctive relief [Doc. 3] will be **DENIED**, his motion to amend his complaint [Doc. 6] will be **GRANTED**, the Court will screen his amended complaint [Doc. 6-1], and he will have 30 days to file a second amended complaint with (1) a short and plain statement of the facts underlying his retaliation claim against Lieutenant ("Lt.") Hacker and (2) the relief he requests for that retaliation claim.

## I. FILING FEE

It appears from Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] that he cannot pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee collection procedure, the Clerk is **DIRECTED** to provide a copy of this memorandum opinion and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy. This memorandum opinion and order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. MOTION FOR INJUNCTIVE RELIEF

In his motion for injunctive relief, Plaintiff requests that the Court order the Morgan County Correctional Complex ("MCCX") Law Library staff to allow him more access to the

MCCX law library and allow him to become an MCCX inmate legal assistant [Doc. 3, p. 1]. Because Plaintiff filed the instant motion before any Defendant has been served, the Court treats it as a motion for a temporary restraining order. *See* Fed. R. Civ. P. 65(b).

Plaintiff is no longer at the MCCX or in TDOC custody [Doc. 7]. He is now a pretrial detainee at the Davidson County Downtown Detention Center [*Id.*].[1] Plaintiff's release from TDOC custody ended the alleged violation(s) of his constitutional rights for which Defendants could be held responsible, which renders his request for injunctive relief moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that an inmate's claim for declaratory and injunctive relief against prison officials became moot once prisoner was transferred to different facility); *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995) (holding inmate's request for injunctive relief mooted upon his transfer from relevant prison). Accordingly, Plaintiff's motion for injunctive relief [Doc. 3] is **DENIED**.

## III.    MOTION TO AMEND COMPLAINT

Plaintiff's motion to amend his complaint [Doc. 6] is **GRANTED** only to the extent that the Court will now screen his amended complaint [Doc. 6-1].

---

[1]  The Court takes judicial notice that Plaintiff was booked into the Downtown Detention Center on February 24, 2026, and is facing two felony murder charges and two misdemeanor charges for violation of a restraining order. *See* Davidson Cnty. Sheriff's Office, *Active Inmate Search*, https://dcso.nashville.gov/Search/Details/1061097?searchType=Person (last visited June 30, 2026). The Court may take judicial notice of information provided by a public authority. *See Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 n.6 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites." (citations omitted)).

## IV. AMENDED COMPLAINT SCREENING

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### B. Allegations

First, Plaintiff's amended complaint contains numerous general allegations about Defendants' job responsibilities and actions that do not allege any resulting effect on Plaintiff

[Doc. 6-1, pp. 2–6]. Accordingly, for purposes of judicial efficiency, the Court will summarize only the amended complaint allegations in which Plaintiff seeks to allege a named Defendant violated his constitutional rights. All other factual allegations in the amended complaint are **DISMISSED** for failure to state a claim upon which relief may be granted under § 1983 as to any named Defendant. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a § 1983 claim upon which relief may be granted).

According to plaintiff, Defendant Gregg oversees the MCCX school and law library and denied Plaintiff access to the courts by refusing to print lawsuits, not allowing him to make copies of legal materials, deleting his legal writings, and breaking his backup file disc in half [*Id.* at 2]. Also, either Defendant Gregg or Defendant Labarge "opened and deleted" many of Plaintiff's legal documents, including documents protected by attorney/client privilege [*Id.* at 3]. Additionally, Defendant Gregg took Plaintiff's legal work from another prisoner who is "his lead researcher" and "refused to return it" [*Id.*]. Plaintiff attempted to retrieve his legal documents from Defendant Gregg on various occasions but was unable to do so, and Plaintiff believes this was because Defendant Gregg "was dodging [P]laintiff to keep his materials" [*Id.* at 4].

When Plaintiff finally encountered Defendant Gregg, this Defendant told him that she did not have to give him any of his legal materials but would give him half of the materials [*Id.*]. When she did so, Plaintiff discovered his backup disc was broken in half [*Id.*]. Plaintiff requested that Defendant Gregg give him back the other half of his materials, but she refused, at which point Plaintiff instructed her to "have a courier bring them to [his] housing unit"

before leaving the school building [*Id.*]. Defendant Gregg chased Plaintiff out of the building and called him names before signaling Sergeant ("Sgt.") Bray [*Id.*].

Thereafter, Sgt. Bray "jumped and battered [P]laintiff without cause, restraining him unnecessarily and escorting him to a holding cell," where Sgt. Bray left Plaintiff with half of his legal papers [*Id.* at 4]. Plaintiff categorizes this as an assault and battery [*Id.* at 2, 4].

Plaintiff further asserts that while he was in the holding cell to which Sgt. Bray took him, Lt. Hacker came to see him, and Sgt. Bray told Lt. Hacker that Plaintiff wanted Lt. Hacker's name and the name of his sergeant to file a lawsuit [*Id.* at 4]. The door to the holding cell subsequently closed with Plaintiff and Lt. Hacker in the cell, and Lt. Hacker told Plaintiff he "really want[ed] to f[]ck [him" up [*Id.*]. Then, when Lt. Hacker was leaving the holding cell, Lt. Hacker told Plaintiff that "everyone" who had tried to sue him "ended up dead, catch my drift" [*Id.* at 4–5]. Lt. Hacker also told Plaintiff that Plaintiff would be sent to "the hole," even though Plaintiff had done nothing [*Id.* at 5]. But Lt. Hacker instead had Plaintiff sent "to the most dangerous unit in 'the triangle'" [*Id.*]. This placement caused a "flare up" of Plaintiff's psychological and emotional injuries, for which he submitted "a mental health sick call request" [*Id.*]. But no prisoner injured Plaintiff in this placement "because the gangs loved having [Plaintiff] write papers for them" [*Id.*]. Plaintiff also states that Lt. Hacker assaulted him [*Id.* at 2].

Plaintiff later learned that Defendant Gregg's act of breaking his backup disc destroyed the files on that disc [*Id.* at 5]. He also alleges that "someone, likely [Defendant] Gregg or [Defendant] Labarge," later erased his legal files from the library computers, including "four (4) ready to print and file lawsuits" regarding issues during his MCCX confinement, and that this was to prevent him from filing those lawsuits [*Id.*]. Defendant Gregg defines "legal" as

6

"only the case that got you into the prison," and she will not allow Plaintiff to print documents that do not fit this definition of legal or to print documents another person wrote, even if the document has Plaintiff's name on it and he completed a withdrawal voucher [*Id.* at 5–6]. Defendant Gregg also refused to allow Plaintiff to print documents when he was indigent [*Id.* at 6].

Defendants Campbell, Labarge, and Schumpert failed to print or photocopy legal documents for Plaintiff that they found were not legal, including "a Habeas Corpus[][,] [] responses to disciplinary decisions," and legal documents that "needed to be filed in a court of law," such as a legal complaint or response [*Id.* at 2, 5, 6]. This occurred even when Plaintiff had taken money out of his prisoner account for the copies, and when he was indigent [*Id.* at 6].

TDOC Commissioner Frank Strada "failed his duty when he failed to inspect the facilities to ensure the policies were be[ing] followed and he also failed his duties by not properly training his warden to ensure these basic rights were delivered and protected as constitutional rights" [*Id.* at 5].

Warden Phillips has failed to respond to Plaintiff's request for permission to assist other prisoners with legal issues in a manner that denies prisoners who want Plaintiff's help access to the courts [*Id.* at 6].

Plaintiff has sued MCCX School Principal and Law Librarian Gregg, Sergeant Bray, Lt. Hacker, Librarian Campbell, Librarian Labarge, Librarian Schumpert, Warden Phillips, and Commissioner Strada in their individual and official capacities [*Id.* at 1–3]. Plaintiff seeks declaratory, injunctive, and monetary relief [*Id.* at 6–8].

7

### C. Analysis

The Court will address Plaintiff's claims against Defendants in their individual capacities before addressing the official capacity claims.

### 1. Individual Capacity Claims

### a. Defendant Gregg

First, to the extent that Plaintiff seeks to hold Defendant Gregg liable under § 1983 for his allegation that she called him names in the verbal confrontation alleged in the amended complaint, this occurrence does not rise to the level of a constitutional violation. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (finding verbal abuse and harassment do not constitute "punishment" in the constitutional sense or otherwise raise a constitutional issue).

Moreover, while Plaintiff additionally alleges in his amended complaint that this Defendant took Plaintiff's legal materials and did not return all of them in a manner that violated his right to due process, the United States Supreme Court has held that when a government employee deprives an individual of property, that taking does not violate the Due Process Clause of the Fourteenth Amendment, if the State provides a post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201). And Plaintiff has not pled that Tennessee's procedures are inadequate to address Defendant Gregg's alleged taking of his legal property, as is necessary

to state a plausible claim regarding deprivation of property. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983).

Taken together, Plaintiff's remaining allegations against Defendant Gregg assert that she (a) took Plaintiff's legal materials and did not give all of them back and (b) created and enforced a restriction on prisoner use of MCCX library equipment to the case that resulted in the prisoner's confinement. But Plaintiff does not set forth any facts from which the Court can plausibly infer that the alleged taking of his legal materials or the relevant library equipment restriction caused any prejudice to his meritorious legal claim, as required to state a plausible claim for violation of his constitutional right of access to the courts. *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead that his meritorious claim was prejudiced by the alleged denial of adequate legal resources to state a claim for denial of access to courts (citation omitted)).[2]

Accordingly, the complaint fails to state a plausible claim for violation of § 1983 as to Defendant Gregg, and she is **DISMISSED**.

### b. Defendants Campbell and Schumpert

Plaintiff's allegations against Defendants Campbell and Schumpert also assert that these Defendants violated his right to access the courts by not allowing him to print or photocopy legal documents. Again, however, Plaintiff does not set forth any facts that allow the Court to plausibly infer that these Defendants prejudiced Plaintiff's meritorious legal claim, such that they could have violated his right to access the courts. *Id.* Accordingly, these Defendants are likewise **DISMISSED**.

---

[2] It is also apparent from Plaintiff's numerous legal filings in this District that he had access to adequate supplies to pursue his legal claims.

9

### c. Defendant Labarge

Plaintiff's allegations against Defendant Labarge are substantively identical to claims he also asserts against Defendants Gregg, Campbell, and Schumpert that the Court already addressed above. Accordingly, for the same reasons Plaintiff's amended complaint fails to state a plausible claim for violation of § 1983 against Defendants Gregg, Campbell, and Schumpert, his allegations against Defendant Labarge also fail to state a plausible claim for violation of § 1983, and she is also **DISMISSED** from this action.

### d. Defendant Sgt. Bray

Plaintiff seeks to assert excessive force claims against Sgt. Bray. In considering whether a use of force violates the Eighth Amendment's prohibition against cruel and unusual punishment, courts apply a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e., the subjective component; and (2) whether the conduct, in context, is sufficiently serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson v. McMillan*, 503 U.S. 1, 6, 9 (1992).

Plaintiff's allegations that Sgt. Bray "jumped and battered [him]," restrained him unnecessarily, and committed assault and battery on him are fully conclusory, and nothing in the amended complaint supports a plausible inference that Sgt. Bray maliciously or sadistically used force against Plaintiff in a manner that would violate today's standards for decency, such that it could have violated the Eighth Amendment. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (providing that "[a]n inmate who

10

complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim" (internal quotations admitted)).

Accordingly, Defendant Sgt. Bray is also **DISMISSED**.

### e.      Defendant Lt. Hacker

Plaintiff's allegation that Lt. Hacker assaulted him is also conclusory and does not allow the Court to plausibly infer any violation of Plaintiff's constitutional rights. *Iqbal*, 556 U.S. at 678. Moreover, while Plaintiff also alleges that Lt. Hacker threatened to use force on him, threat of force is not equivalent to an actionable use of force, and this allegation therefore fails to rise to the level of a violation of the Eighth Amendment. *See, e.g.*, *Mattingly v. Barnes*, No. 3:14-CV-591-J-32JBT, 2018 WL 1496929, at *14 (M.D. Fla. Mar. 27, 2018), *aff'd sub nom. Mattingly v. Duval Cnty. Jail*, 777 F. App'x 971 (11th Cir. 2019) (noting "Plaintiff's allegation that Defendant Khan threatened to 'taze' him" failed to state a claim, as "verbal threats and harassment are generally not actionable under § 1983"); *Hamilton for J.H. v. Fort Wayne*, No. 16-CV-132, 2017 WL 5467038, *8 (N.D. Ind. 2017) ("The Court finds that a verbal warning about a particular use of force that never transpires is not the same as actually using the force."); *see also Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989) ("[T]he action of a police officer in pointing a gun at a person is not, in and of itself, actionable[.]").

On the other hand, Plaintiff's allegation that Lt. Hacker at least impliedly threatened Plaintiff and sent him to a dangerous housing placement after learning that Plaintiff wanted to file a lawsuit are sufficient to allege a claim for retaliation in violation of § 1983. *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). As such, this claim will proceed herein. But the Court notes that, in his requests for relief, Plaintiff states that he only seeks monetary relief

11

from this Defendant "for his assault and bodily harm of [P]laintiff," which Plaintiff categorizes as a violation of the Eighth Amendment [*Id.* at 7].

Accordingly, the amended complaint does not contain Plaintiff's request for relief for the retaliation claim against Lt. Hacker that will proceed herein. As such, it does not comply with Rule 8(a)(3) of the Federal Rules of Civil Procedure, which requires a complaint to contain a demand for the relief sought. Thus, the Court will allow Plaintiff 30 days from the date of entry of this order to file a second amended complaint with (1) a short and plain statement of the facts underlying his retaliation claim against Lt. Hacker and (2) the relief he requests for that retaliation claim. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).

### f. Defendant Warden Phillips

Plaintiff's allegation that Warden Phillips failed to respond to Plaintiff's request to be allowed to assist other prisoners with legal issues does not allow the Court to plausibly infer any violation of Plaintiff's constitutional rights. Specifically, the only injury Plaintiff alleges resulted from his inability to assist other prisoners is that those other prisoners could not access the courts, and Plaintiff does not have standing to assert such a claim. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (holding that "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners"). Moreover, the fact that Warden Phillips knew of Plaintiff's request but failed to respond to that request does not rise to the level of a constitutional violation. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding that knowledge of a prisoner's grievance and failure to respond to or remedy the complaint was insufficient to impose liability on supervisory personnel under § 1983 and holding "liability under § 1983 must be based on

12

active unconstitutional behavior and cannot be based upon a mere failure to act") (citation and internal quotation marks omitted). Additionally, to the extent that Plaintiff seeks to hold Warden Phillips liable under § 1983 for the acts of other prison employees based solely on his supervisory position, this is not a theory under which Warden Phillips may be held liable under § 1983. *Iqbal*, 556 U.S. at 676 (2009) ("[O]ur precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*").

As such, Defendant Warden Phillips is also **DISMISSED**.

### g.      Defendant Commissioner Strada

Plaintiff's allegations regarding Commissioner Strada's alleged failure to inspect the facility and failure to train Warden Phillips are fully conclusory and do not allow the Court to plausibly infer that this Defendant violated Plaintiff's constitutional rights. *Frazier*, 41 F. App'x at 764; *Troutman v. Louisville Metro Dep't of Corrs*., 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (internal quotation marks and citations omitted). Also, like Warden Phillips, Commissioner Strada cannot be liable under § 1983 based solely on his supervisory position. *Iqbal*, 556 U.S. at 676 (2009).

As such, Defendant Commissioner Strada is also **DISMISSED**.

### 2.      Official Capacity Claims

Plaintiff's claims against the individual Defendants in their official capacities are actually against the TDOC and/or the State of Tennessee. *See Kentucky v. Graham*, 473 U.S.

159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").  But neither the TDOC nor the State of Tennessee is an entity subject to suit under § 1983.  *Hix*, 196 F. App'x at 355; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (providing that "a State is not a person within the meaning of § 1983").

The Court additionally notes that even though the state is not a person subject to liability under § 1983, the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908) allows a plaintiff to "bring claims for prospective relief against state officials sued in their official capacity to prevent future federal constitutional or statutory violations."  *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017) (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). "To determine if *Ex Parte Young* applies, [the Court] 'need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Id.* (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 616 (6th Cir. 2003)) (internal citation and quotation marks omitted).

As set forth above, the only allegation in Plaintiff's complaint that states a plausible claim for violation of § 1983 and therefore will proceed herein is his retaliation claim against Defendant Hacker, for which Plaintiff does not and cannot allege any ongoing violation or seek prospective relief, as he is no longer in MCCX or TDOC custody.  Accordingly, no claims will proceed herein under *Ex Parte Young*.

## V.    CONCLUSION

For the reasons set forth above:

1.  Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2.  Plaintiff is **ASSESSED** the civil filing fee of $350.00;

14

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Plaintiff's motion for injunctive relief [Doc. 3] is **DENIED**;

6. Plaintiff's motion to amend his complaint [Doc. 6] is **GRANTED** to the extent that the Court has now screened the amended complaint [Doc. 6-1];

7. This action will only proceed as to Plaintiff's retaliation claim against Defendant Lt. Hacker, and all other claims and Defendants are **DISMISSED**;

8. The Clerk is **DIRECTED** to send Plaintiff a form § 1983 complaint;

9. Plaintiff has thirty (30) days from the date of entry of this order to file a second amended complaint with (1) a short and plain statement of the facts underlying his retaliation claim against Defendant Lt. Hacker and (2) the relief he requests for that retaliation claim;

10. Plaintiff is **NOTIFIED** that any amended complaint he files will completely replace the previous complaint;

11. Plaintiff is also **NOTIFIED** that if he fails to timely comply with this order, this action will be dismissed for failure to prosecute and to follow the orders of this Court; and

12. Plaintiff is **ORDERED** to immediately inform the Court and Defendant Lt. Hacker or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen days of any change in address may result in the dismissal of this action.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE